UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MELVIN E. SMITH, and
KARON SMITH,

        Plaintiffs,

vs.

Case No. 05-CV-71643
HON. GEORGE CARAM STEEH

WEST BLOOMFIELD, MICHIGAN,
POLICE DEPARTMENT, et al.,

        Defendants.

_____/

## ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (# 14)

Defendant West Bloomfield Township, Michigan Police Department, and Township Police Officers Sergeant Turner, Dispatcher Bates, Maples, Vohwinkle, Deulis, Cupp, and Page move for summary judgment of plaintiffs Melvin Smith's and Karon Smith's 42 U.S.C. § 1983 claims of violations of their Fourteenth Amendment substantive due process rights, Fourteenth Amendment rights to equal protection of the law, and Fourth Amendment right to be free from unreasonable searches and seizures.  A hearing on the motion was held on June 6, 2006.  For the reasons stated below and on the record, defendants' motion for summary judgment will be GRANTED, IN PART, as to plaintiffs' substantive due process and equal protection claims in their entirety, and as to plaintiffs' unreasonable search and seizure claims as alleged against Township, Dispatcher Bates, and Officers Deulis, Cupp, and Page.  Defendants' motion for summary judgment will be DENIED, IN PART, as to plaintiffs' claims of unreasonable search and seizure as alleged against Sergeant Turner and Officers Maples and Vohwinkle.

## I. Background

Melvin and Karon Smith filed a complaint on April 27, 2005 alleging Melvin received a phone call at the Smiths' West Bloomfield Township residence on March 10, 2005 at approximately 4:30 a.m. from his former brother-in-law Vincent Taylor. Taylor allegedly asked to come to the home to talk with Melvin about an argument Taylor had just had with his live-in girlfriend Brittany Barnes. Taylor had allegedly struck Barnes with a handgun. Taylor and Barnes also lived in the Township. When Taylor arrived at the Smiths' home, Melvin allegedly determined that Taylor was unarmed, then advised Taylor to turn himself in to law enforcement officers. Plaintiffs allege Melvin simultaneously received a phone call from Township Police Dispatcher Yvonne Bates, who advised Melvin that Township Officers were outside and that everyone must immediately exit the home with their hands over their heads. Plaintiff Karon Smith was allegedly in an upstairs bedroom sleeping with her 10-year old sister. Plaintiffs continue:

> 13. [Melvin] Smith then questioned the female employee [Bates] . . . as to why it was necessary for him, his wife, and the female child to exit the home in the middle of a cold winter night when there was no legal excuse for a search of the home, or any indication as to why Smith, his wife, and the child posed any danger at all to the police officers who, by this time, were in the front and the rear of the home. The female employee, in response to this questioning, made it very clear that there would be serious consequences if all occupants of the home did not immediately exit in the manner described above.

Complaint, at 3. Melvin alleges he "begged" Dispatcher Bates not to be forced to have his family exit the home, and instead escorted Taylor to the front door where Taylor was taken into custody. Township Officers Sergeant Turner, Maples, and Vohwinkle then allegedly entered the home's foyer without consent. Plaintiffs allege Officer Vohwinkle held a shotgun in a "threatening" manner while Melvin kept his hands in the air. Melvin allegedly told the Officers that he was a retired DEA Agent, and that Taylor had not been armed.

2

Plaintiffs allege that, without a warrant or legal justification, Officers Turner, Maples, and Vohwinkle proceeded to search the first-floor of the home and the garage. Plaintiffs allege no weapons were found. Plaintiffs are African-Americans. Plaintiffs allege the several defendants are liable for violating their substantive due process rights, rights to equal protection of the law, and rights to be free from unreasonable searches and seizures. Defendants move for summary judgment of all claims.

## II. Analysis

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences arising therefrom must be construed in a light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001). If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in

the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence. Anderson, 477 U.S. at 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

### A. Substantive Due Process and Equal Protection Claims

Plaintiffs' claims allege three distinct unconstitutional acts: (1) the warrantless entry and search of the home and garage; (2) Dispatcher Bates' insistence that all of Melvin's family immediately exit the home with their hands over their heads at 4:30 a.m.; and (3) racially motivated treatment. Where a Constitutional Amendment provides explicit protection against particular Government misconduct, that Amendment and not the more generalized notion of substantive due process applies. County of Sacramento v. Lewis, 523 U.S. 833, 842 (1998) (articulating the holding in Graham v. Connor, 490 U.S. 386 (1989)).

The Fourth Amendment applies to unreasonable searches and seizures, not to attempted seizures of a person. Lewis, 523 U.S. at 843-44 (citing California v. Hodari D., 499 U.S. 621, 626 (1991) and Brower v. County of Inyo, 489 U.S. 593 (1989)). "[T]he Equal Protection Clause of the Fourteenth Amendment provides citizens a degree of protection independent of the Fourth Amendment protection against unreasonable searches and seizures." Farm Labor Organizing Committee v. Ohio State Highway Patrol, 308 F.3d 523, 533 (6th Cir. 2002) (quoting United States v. Avery, 137 F.3d 343, 352 (6th Cir. 1997)). The substantive component of the Due Process Clause protects citizens from arbitrary or oppressive government action. Lewis, 523 U.S. at 847; Collins v. Harker Heights, 503 U.S. 115, 126, 128 (1992); DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 196 (1989)).

Plaintiffs' claim premised on Dispatcher Bates' insistence that Melvin's family immediately exit their home is governed by a substantive due process analysis as an attempted seizure, requiring proof that the defendants' actions, via Bates, were arbitrary or conscious shocking in a constitutional sense. Lewis, 523 U.S. at 847 (quoting Collins, 503 U.S. at 128). Plaintiffs' independent equal protection claim requires proof that the defendants' actions were "motivated by a discriminatory purpose." Farm Labor, 308 F.3d at 533-34 (quoting Wayte v. United States, 470 U.S. 598, 608 (1985)). Plaintiffs have failed to come forward with evidence that Dispatcher Bates' communications with Melvin were arbitrary or conscious shocking under the undisputed circumstances, particularly when considering that neither Melvin, Karon, nor the 10-year old child were ever forced to exit the home. Plaintiffs have also failed to come forward with evidence that could support a finding that any of the defendants' actions were motivated by a racially discriminatory purpose. Construing the pleadings and evidence in a light most favorable to the plaintiffs, defendants' are entitled to summary judgment of plaintiffs' substantive due process and equal protection claims as a matter of law. Amway, 323 F.3d at 390; First Nat'l Bank, 391 U.S. at 270.

### B. Unreasonable Search and Seizure Claim

The Fourteenth Amendment incorporates the Fourth Amendment, prohibiting the states from conducting unreasonable searches and seizures. O'Brien v. City of Grand Rapids, 23 F.3d 990, 996 (6th Cir. 1994) (citing Mapp v. Ohio, 367 U.S. 643 (1961)). "[S]earches and seizures inside a home without a warrant are presumptively unreasonable." O'Brien, 23 F.3d at 996 (quoting Payton v. New York, 445 U.S. 573, 586 (1980)). "Even if police have probable cause to arrest a suspect, a warrant is required for police entry into the suspect's house unless there are exigent circumstances that excuse

5

the warrant requirement." O'Brien, 23 F.3d at 996 (citing Coolidge v. New Hampshire, 403 U.S. 443, 474-75 (1971)). Exigent circumstances denote "real immediate and serious consequences that would certainly occur were a police officer to postpone action to get a warrant." O'Brien, 23 F.3d at 996 (quoting Welsh v. Wisconsin, 466 U.S. 740, 751 (1984)) (internal quotations omitted). The Sixth Circuit has recognized three circumstances that justify a warrantless entry into a home: (1) "hot pursuit" of a fleeing subject; (2) immediate threat of harm to police officers or the public; and (3) immediate action necessary to prevent destruction of vital evidence or thwart the escape of a known criminal. O'Brien, 23 F.3d at 996 n.5 (citing Jones v. Lewis, 874 F.2d 1125, 1130 (6th Cir. 1989)). Consent also serves as an exception to the warrant requirement. O'Brien, 23 F.3d at 997 (citing United States v. Mendenhall, 446 U.S. 544 (1980)).

### i. Officer Liability

Due to the conflicting deposition testimony of Melvin Smith and Sergeant Turner, a genuine factual dispute remains whether Melvin gave his consent to Sergeant Turner, Officer Maples, and Officer Vohwinkle to enter and search the home. There is no dispute, however, that defendants Officers Deulis, Cupp, Page, and Dispatcher Bates did not directly participate in the entry and search of the home. A police officer's mere presence at the scene of a search, without a showing of direct responsibility for the action, is insufficient to support a finding of § 1983 liability against that officer. Ghandi v. Police Dept. of the City of Detroit, 747 F.2d 338, 352 (6th Cir. 1984). Dispatcher Bates and Officers Deulis, Cupp, and Page are entitled to summary judgment as to plaintiffs' unreasonable search and seizure claims. Id.; Amway, 323 F.3d at 390; First Nat'l Bank, 391 U.S. at 270.

With the issue of consent in dispute, defendants argue Turner, Maples, and Vohwinkle could lawfully make a warrantless entry into the Smiths' home as part of a

"protective sweep," consistent with the exigencies of eliminating a potential threat to public and officer safety, and to prevent the possible destruction of the handgun Taylor allegedly used to assault Barnes.  It is undisputed, however, that Taylor was in physical custody *before* Turner, Maples, and Vohwinkle made their warrantless entry into the home and, according to Melvin Smith, the three Officers continued their warrantless search of the home after Melvin retrieved his DEA commission identifying himself as a retired DEA Agent, after Sergeant Turner recognized Melvin as a special agent with whom Turner had worked in the past, and after Smith told the Officers that Taylor was unarmed when he arrived at Smith's home.  Defendants have failed to articulate real immediate and serious consequences that were certain to occur that justified the postponement of getting a warrant.  O'Brien, 23 F.3d at 996.

At the June 6, 2006 hearing, defense Counsel proffered Perkins v. United States, No. 04-1328, 127 Fed.Appx. 830 (6th Cir. April 15, 2005) (unpublished) as supporting the warrantless search and seizure of the plaintiffs' home. A panel of the Sixth Circuit in Perkins recognized the "protective sweep" exception to warrantless searches of a home as set forth in Maryland v. Buie, 494 U.S. 325 (1990): "'A quick and limited search,' Buie holds, is permitted 'to protect the safety of police officers' when they 'possess [] a reasonable belief based on articulable facts which, taken together with the rational inferences from those facts, reasonably warrant[] the officer[s] in believing that the area swept harbor[s] an individual posing a danger to the officer[s] or others.'"  Perkins, 127 Fed.Appx. at 833 (quoting Buie, 494 U.S. at 327).  Defendants have failed to articulate facts giving rise to a reasonable belief that an individual was harbored inside the Smiths' home posing a danger to public and officer safety.  Taylor was in police custody and Melvin Smith had successfully identified himself as a retried federal law enforcement officer before

Turner, Maples, and Vohwinkle swept through the first floor of the Smiths' home and their garage. Indeed, the nature of the search performed by Officers Turner, Maples, and Vohwinkle, as attested to by Melvin Smith, was not a search for dangerous individuals in hiding, but a "plainview" search for the handgun used by Taylor in areas within the home and garage where Melvin told the Officers Taylor had been. See Melvin Smith October 11, 2005 Transcript, at 29-30. Defendants have not articulated any facts that "would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." Perkins, 127 Fed.Appx. at 835 (quoting Buie, 494 U.S. at 334). Neither have defendants articulated facts to support a belief that an immediate search of the home and garage was necessary to prevent destruction of Taylor's handgun. Defendants Turner, Maples, and Vohwinkle are not entitled to summary judgment based on a "protective sweep" exception to the warrant requirement. Amway, 323 F.3d at 390; First Nat'l Bank, 391 U.S. at 270.

Defendants argue in the alterative that, even assuming Smith did not consent to the warrantless entry into the home, Turner, Maples, and Vohwinkle are entitled to qualified immunity. Whether an officer is entitled to qualified immunity is a two-part test: (1) whether the facts viewed in a light most favorable to the plaintiff show that the officer's conduct violated a constitutional right; and (2) if so, "whether that right was clearly established such that a reasonable official, at the time the act was committed, would have understood that his behavior violated that right." Comstock v. McCrary, 273 F.3d 693, 701 (6th Cir. 2001) (quoting Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 2156 (2001)).

The evidence viewed in a light most favorable to the Smiths shows that Officers Turner, Maples, and Vohwinkle violated the Smiths' constitutional rights to be free from a warrantless entry into their home in the absence of consent or exigent circumstances. It

8

was clearly established by March 10, 2005, the date of the incident, that a warrantless entry into a home absent consent or exigent circumstances violates the Fourth Amendment. See O'Brien, 23 F.3d at 996. Sergeant Turner himself testified that, had Smith refused consent to enter and walk through the home, he would not have proceeded with the search, "[a]bsolutely not, not without a warrant." Turner Transcript, n.d.. at 35, attached to Plaintiffs' May 12, 2006 Brief. On this record, it is for the jury to decide whether Turner, Maples, and Vohwinkle could reasonably believe that Smith gave his consent to search the home. "Where . . . the legal question of qualified immunity turns upon which version of facts one accepts, the jury, not the judge, must determine liability." Fisher v. City of Memphis, 234 F.3d 312, 317 (6th Cir. 2000) (quoting Sova v. City of Mt. Pleasant, 142 F.3d 898, 902 (6th Cir.1998)). Defendants Turner, Maples, and Vohwinkle are not entitled to summary judgment based on qualified immunity. Amway, 323 F.3d at 390; First Nat'l Bank, 391 U.S. at 270.

### ii. Township Liability

Defendants argue Township cannot be held liable because plaintiffs have not come forward with evidence that the alleged unlawful warrantless entry and search of the Smiths' home was the result of a Township policy, custom, or practice. The court agrees. To hold Township liable, plaintiffs must be able to prove that the warrantless entry was the product of an unconstitutional policy, custom, or practice of "deliberate indifference" to the plaintiffs' constitutional rights. Oklahoma v. Brown, 520 U.S. 397, 403 (1997) (citing Canton v. Harris, 489 U.S. 378, 389 (1989) and Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 694 (1978)). A municipality may not be held liable under § 1983 unless its deliberate action was the "moving force" behind the plaintiff's deprivation of federal rights. Id (citing Monell, 436 U.S. at 694).

Plaintiffs argue that the alleged incident implicates a Township policy of a failure to train, and thus a policy, in essence, of no policy. "[R]igorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." Brown, 520 U.S. at 405 (citing Canton, 489 U.S. at 391-392). A municipality may be held liable for a failure to train or supervise where: the municipality is put on notice that a program does not prevent constitutional deprivations yet continues to take the same approach in deliberate indifference to continuing constitutional violations; a continuous pattern of tortious conduct as opposed to an officer being involved in a single tortious event. Id, at 408. A single incident might support a finding of "deliberate indifference" where a "highly predictable consequence" results from an officer's obvious lack of specific tools to handle a situation that arises from a deliberate indifference to train. Id, at 409, 410. "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality . . . can a city be liable for such a failure under § 1983." Canton, 489 U.S. at 391.

Plaintiffs have failed to proffer evidence that would allow a reasonable jury to conclude that the warrantless search of the Smith's home by Sergeant Turner, Officer Maples, and Officer Vohwinkle was a highly predictable result of the Township's deliberate or conscious choice to conduct warrantless home searches. Sergeant Turner, who directed the entry into the Smith's home, testified that, absent consent he "absolutely" would not have entered the home without a warrant. Turner Transcript, n.d.. at 35, attached to Plaintiffs' May 12, 2006 Brief. Plaintiffs have not offered evidence that Turner, Maples, or Vohwinkle obviously lacked the training to handle the situation as the result of Township's deliberate indifference to training its officers. Township is entitled to summary judgment as a matter of law. Oklahoma, 520 U.S. at 403; Monell, 436 U.S. at 694; Amway, 323 F.3d

at 390; <u>First Nat'l Bank</u>, 391 U.S. at 270.

### III. Conclusion

Defendants' motion for summary judgment is hereby GRANTED, IN PART, as to plaintiffs Melvin Smith's and Karon Smith's substantive due process and equal protection claims in their entirety, and as to plaintiffs' unreasonable search and seizure claims as alleged against Township, Dispatcher Bates, and Officers Deulis, Cupp, and Page. Plaintiffs' substantive due process claims and equal protection claims are hereby DISMISSED, with prejudice, in their entirety. Plaintiffs' unreasonable search and seizure claims are hereby DISMISSED, with prejudice, but ONLY as alleged against defendants Township, Bates, Deulis, Cupp, and Page. Defendants' motion for summary judgment is hereby DENIED, IN PART, as to plaintiffs' unreasonable search and seizure claims as alleged against Sergeant Turner and Officers Maples and Vohwinkle.

SO ORDERED.

    s/George Caram Steeh  
    GEORGE CARAM STEEH  
    UNITED STATES DISTRICT JUDGE

Dated: June 13, 2006

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on June 13, 2006, by electronic and/or ordinary mail.

    s/Josephine Chaffee  
    Secretary/Deputy Clerk